**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELA JENKINS, <br><br> Plaintiff, <br> v. <br> STERLING JEWELERS, INC., <br><br> Defendant. | Case No.: 17cv1999-MMA (BGS) <br><br> **ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION** <br><br> [Doc. No. 4] |

Plaintiff Angela Jenkins ("Plaintiff") commenced the instant action against Defendant Sterling Jewelers, Inc. ("Defendant") on September 29, 2017, asserting fifteen causes of action arising from her employment with Defendant. *See* Complaint. Defendant moves to compel arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act. *See* Doc. No. 4. Plaintiff filed an opposition to Defendant's motion, to which Defendant replied. *See* Doc. Nos. 5, 9. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS IN PART** Defendant's motion to compel arbitration.

/ / /

/ / /

## BACKGROUND

On August 16, 2010, Plaintiff began working as a Sales Associate for Defendant's Escondido, California location. Doc. No. 4-6 (hereinafter "Broadhead Decl.") ¶ 4; *see also* Doc. No. 5-1 (hereinafter "Jenkins Decl.") ¶ 5. That same day, Plaintiff signed a document entitled "California Resolve Program Alternative Dispute Resolution Arbitration Agreement." Broadhead Decl. ¶ 4. The Arbitration Agreement[1], a two-page document, provides in pertinent part:

> I . . . hereby agree to utilize the Sterling RESOLVE Program to pursue any pre-employment, employment or post-employment dispute, claim, or controversy (collectively called "claim") against Sterling Jewelers Inc., its predecessors, successors, affiliates . . . and attorneys (collectively called "Sterling") regarding any alleged unlawful act regarding my application for employment, employment or the termination of my employment which could have otherwise been brought before an appropriate court including, but not limited to, claims under the Age Discrimination in Employment Act . . . any state anti-discrimination statutes; wage and hour laws; equal pay laws; any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law.
>
> . . .
>
> The parties agree to follow the multi-step process outlined in the RESOLVE Program, which culminates in the use of arbitration. In such an event, the claim shall be arbitrated by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") as amended by the Sterling RESOLVE Program. The arbitrator's decision shall be final and binding. The arbitrator

---

[1] The Court notes that Plaintiff, in her opposition to the instant motion, repeatedly references Bonus Plan agreements that Plaintiff contends "superseded the alleged Arbitration Agreement." Doc. No. 5 at 3; *see also* Jenkins Decl. ¶¶ 6-11. Upon review of Sterling Jewelers Inc. Mall and Outlet Store Managers' Bonus Plan, however, the terms expressly indicate that the Bonus Plan "supersedes all prior *bonus arrangements* . . . ." Jenkins Decl., Exh. 1 (emphasis added). Plaintiff submits no evidence, admissible or otherwise, supporting her contention that the Bonus Plan agreements supersede the agreement in question.

> shall have the power to award any types of legal or equitable relief that would be available under applicable law.

Doc. No. 4-7 at 2.

Finally, the paragraph preceding Plaintiff's signature provided an opt-out mechanism to the RESOLVE arbitration program. Specifically, the document provided, "[e]mployee acknowledges that he/she has the right to opt out of this Agreement by sending a letter to RESOLVE Program Administration, c/o RESOLVE Program Administrator at 375 Ghent Road, Akron, Ohio 44333, and postmarked within 30 calendar days, stating Employee wishes to 'opt-out' of this Agreement." *Id.* at 3.

On June 20, 2017, Defendant terminated Plaintiff's employment "for being disrespectful and uncooperative" with respect to an interview conducted by Defendant's loss prevention investigator, Paul Leasum, on June 19, 2017. Complaint ¶¶ 22, 26. Plaintiff indicates that the EEOC issued a "Right to Sue" letter on or about August 1, 2017. *Id.* ¶ 31. Plaintiff filed this action on September 29, 2017, asserting fifteen causes of action arising from her employment with Defendant. *See* Complaint. Defendant now moves to compel arbitration pursuant to the Arbitration Agreement dated August 16, 2010, bearing the signature of "Angela Jenkins." *See* Doc. Nos. 4; 4-7 at 3.

## L<span style="font-variant:small-caps">egal</span> S<span style="font-variant:small-caps">tandard</span>

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts are also directed to resolve any "ambiguities as to the scope of the arbitration

clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476–77 (1989).

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and citation omitted). If the Court finds that the answers to those questions are "yes," the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Agreements to arbitrate are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Concepcion*, 563 U.S. at 339-41.

## DISCUSSION

### A. Objections to Evidence

As a preliminary matter, both parties have submitted various evidentiary objections in connection with the instant motion. *See* Doc. Nos. 5-3, 9-2. Defendant filed a response to Plaintiff's evidentiary objections. *See* Doc. No. 9-3. The Court addresses the parties' objections in turn.

#### 1. Plaintiff's Objections

Plaintiff objects to two excerpts of the declaration of Ms. Tracie Childs, submitted

in support of Defendant's motion to compel arbitration, on the grounds that the statements lack foundation, have not been properly authenticated, and constitute improper opinion. *See* Doc. No. 5-3 at 2. In reaching its conclusion below, the Court does not rely on any statements that lack foundation, constitute improper opinion, or that have not been properly authenticated. Thus, to the extent the Court considers such statements, the Court **OVERRULES** Plaintiff's objections to Ms. Childs' declaration.

Additionally, Plaintiff objects to two excerpts of the declaration of Ms. Jamie Broadhead, submitted in support of Defendant's motion to compel arbitration, and Exhibit A attached thereto, on the grounds that such statements and Exhibit A constitute hearsay, lack foundation, constitute an improper opinion, and have not been properly authenticated. *See* Doc. No. 5-3 at 2-3. Specifically, Plaintiff contends the declaration "lacks both foundation and authentication because there is no evidence submitted that shows she was present and/or employed by Defendant at the time Plaintiff was hired. There is no evidence to support the purported conclusion/opinion that Pllaintiff [sic] signed the documents as declared by Ms. Broadhead." *Id.* at 2. Moreover, Ms. Broadhead "fails to provide any testimony that she is familiar with Plaintiff's signature and/or has evaluated and compared the signature to establish that she is qualified to render an opinion." *Id.* at 3.

In her declaration, Ms. Broadhead states that she is employed by Sterling as the Director of Human Resources Shared Services. Broadhead Decl. ¶ 2. In that capacity, Ms. Broadhead "oversee[s] the orientation and onboarding for new employees for Sterling in California," and is "familiar with the policies, procedures, and documentation maintained by the Human Resources Department in the ordinary course of Sterling business." *Id.* Moreover, Ms. Broadhead attaches as Exhibit A, a true and correct copy of Sterling's RESOLVE Program Alternative Dispute Resolution Arbitration Agreement, "which Plaintiff executed." *Id.* ¶ 5.

Here, the Court finds that Plaintiff's objections with respect to Ms. Broadhead's declaration, and attached exhibit, are without merit. Based upon Ms. Broadhead's

position as Director of Human Resources Shared Services, Ms. Broadhead has personal knowledge of the files and records Sterling maintains in the ordinary course of business. *See* Fed. R. Evid. 602. The Court finds Ms. Broadhead has properly authenticated Exhibit A as a true and correct copy of Sterling's Arbitration Agreement, purportedly signed by Plaintiff. *See* Fed. R. Evid. 901(a); 901(b)(1). That Ms. Broadhead was not present when Plaintiff signed the agreement is irrelevant to whether Ms. Broadhead has properly authenticated the document.

Moreover, Ms. Broadhead's statement that "[i]mmediately upon [Plaintiff's] hire, Plaintiff executed the Arbitration Agreement with Sterling" does not constitute an improper opinion. Ms. Broadhead does not purport to offer any scientific or technical testimony regarding the signature contained on the Arbitration Agreement. *See* Fed. R. Evid. 702. Rather, Ms. Broadhead offers testimony that is "rationally based on the witness's perception[.]" Fed. R. Evid. 701(a). The Arbitration Agreement bears the signature of "Angela Jenkins" and as Defendant points out, Plaintiff does not deny or dispute the signature on the Arbitration Agreement. *See* Doc. No. 4-7 at 3.

Finally, while Plaintiff simply lists "hearsay" as an objection to the declaration and Exhibit A without any further discussion, the Court notes that Exhibit A satisfies the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6).

Accordingly, the Court **OVERRULES** Plaintiff's objections to the declaration of Ms. Broadhead and Exhibit A.

**2. Defendant's Objections**

Defendant submits eight objections to Plaintiff's declaration, submitted in support of her opposition to Defendant's motion to compel arbitration. *See* Doc. No. 9-2. Specifically, Defendant asserts various portions of Plaintiff's declaration are irrelevant, lack foundation, constitute improper opinion, and constitute hearsay. In reaching its conclusion below, the Court does not rely on any statements that are irrelevant, lack foundation, constitute improper opinion, or that constitute hearsay. Thus, to the extent the Court considers such statements, the Court **OVERRULES** Defendant's objections to

Plaintiff' declaration.

**B. <u>Defendant's Motion to Compel</u>**

Defendant moves to compel arbitration arguing "Plaintiff entered into a binding arbitration agreement pursuant to which she is required to arbitrate disputes arising out of her employment through [Defendant's] RESOLVE program." Doc. No. 4-1 at 1. "Despite agreeing to pursue her claims through RESOLVE," Plaintiff filed the instant action in federal court. *Id.* at 5. In opposition, Plaintiff argues that Defendant presents no evidence that anyone "saw Plaintiff sign the agreement," nor any evidence that anyone is "sufficiently familiar with Plaintiff's signature by which they could offer competent testimony that the signature . . . was Plaintiff's or not." Doc. No. 5 at 9. Additionally, Plaintiff contends that the arbitration agreement is unconscionable. *See id.* Moreover, Plaintiff asserts that even if a valid agreement to arbitrate exists, certain claims are not subject to arbitration. *See id.* The Court addresses the parties' arguments in turn.

**1. A Valid Agreement to Arbitrate Exists**

The Court first considers whether there is an agreement to arbitrate between the parties. *See Cox*, 533 F.3d at 1119. A party moving to compel arbitration must prove the existence of a valid arbitration agreement by a preponderance of the evidence. *Olvera v. El Pollo Loco, Inc.*, 93 Cal. Rptr. 3d 65, 71 (Cal. Ct. App 2009). When determining the existence of valid arbitration agreements, "federal courts 'should apply ordinary state-law-principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Court finds that a valid agreement to arbitrate exists. Defendant presents the Arbitration Agreement, bearing the signature of "Angela Jenkins." *See* Doc. No. 4-7 at 3. Plaintiff does not dispute that she signed the Arbitration Agreement. Rather, Plaintiff asserts that Defendant presents no evidence that anyone "saw Plaintiff sign the agreement" nor evidence from someone "sufficiently familiar with Plaintiff's signature" to opine on the authenticity of the signature to the Arbitration Agreement. Doc. No. 5 at

9. Plaintiff cites to no authority in support of these arguments that would compel a finding that an agreement to arbitrate does not exist, nor is the Court aware of any such authority. Accordingly, the Court finds that Defendant has met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence.[2] *See Owens v. Intertec Design, Inc.*, 38 Cal. App. 4th 72, 75 (Cal. Ct. App. 1995) (holding "the arbitration agreement must be enforced as a matter of law" where the plaintiff "presented no evidence, by declaration or otherwise, in support of the 'facts' underlying his arguments in opposition to the [motion to compel arbitration.]").

Second, the Court must consider whether the Arbitration Agreement encompasses Plaintiff's claims. *See Cox*, 533 F.3d at 1119. The Arbitration Agreement expressly provides that Plaintiff agrees to utilize the RESOLVE arbitration program to "pursue *any* pre-employment, employment or post-employment dispute, claim, or controversy . . . against Sterling Jewelers Inc." Doc. No. 4-7 at 2 (emphasis added). All of Plaintiff's claims arise from the termination of her employment with Defendant. *See* Complaint. Thus, the Arbitration Agreement's language clearly encompasses Plaintiff's employment-related claims against Defendant.

Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties.

**2. The Arbitration Agreement is Not Unconscionable**

Plaintiff next argues that even if a valid agreement to arbitrate exists, the Arbitration Agreement is unconscionable under California law and "should not be enforced." Doc. No. 5 at 9. Plaintiff asserts that the agreement is procedurally unconscionable because the agreement required Plaintiff's signature as a condition of

---

[2] The Court notes that the Arbitration Agreement Defendant presents is signed only by Plaintiff, and not by a Sterling representative. *See* Doc. No. 4-7 at 3. However, that Defendant "did not sign the Agreement does not deprive Defendant of standing to compel arbitration." *Ambler v. BT Americas Inc.*, 946 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013) (noting that the arbitration agreement itself clearly indicates the defendant's intent to bind itself and by requiring that the plaintiff sign the agreement as a condition of his employment).

employment. *See id.* at 7. Additionally, Plaintiff contends that the Arbitration Agreement is substantively unconscionable because: (a) the agreement is unilateral; (b) the claims each party can bring pursuant to the agreement are disproportionate; and (c) the agreement shortens the statute of limitations period for claims arising under the agreement. *See id.* at 7-8.

A contract defense of "unconscionability . . . may operate to invalidate arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The party asserting that an arbitration agreement is unconscionable bears the burden of proof. *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 749 (Cal. 2015). Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract. *Armendariz v. Found. Health Psychcare Servs.*, 6 P.3d 669, 690 (Cal. 2000). In California, courts apply a sliding scale: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* However, courts cannot apply principles of unconscionability in a way that undermines the FAA's objective "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344. Instead, courts should give "due regard to the federal policy in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

With respect to procedural unconscionability, Plaintiff contends that "[t]he Agreement required a signature as an absolute condition to employment[.]" Doc. No. 5 at 7. Defendant argues that the Arbitration Agreement expressly provided Plaintiff with the opportunity to opt-out of the agreement; thus, the agreement is not procedurally unconscionable under California law. *See* Doc. No. 9 at 3-4.

A procedural unconscionability analysis focuses on the circumstances surrounding the creation of a contract, and the presence of "oppression or surprise." *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 352 (Cal. Ct. App. 2007) (citations omitted). Oppression results from "an inequality of bargaining power that results in no real

negotiation and an absence of meaningful choice." *Id.* (citing *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Cal. Ct. App. 2001)). Whereas surprise arises when the "agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (citing *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 145 (Cal. Ct. App. 1997).

An "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 6 P.3d at 689. A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores*, 113 Cal. Rptr. 2d at 381. When a party in a weaker bargaining position is given a standardized agreement and "told to take it or leave it without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Cal. Ct. App. 2002) (internal quotations omitted). And although the existence of a market that provides for consumer choice decreases the amount of procedural unconscionability, it does not completely eliminate "the oppression aspect of procedural unconscionability." *Gatton*, 61 Cal. Rptr. 3d at 353.

Here, the Court finds that the Arbitration Agreement is not procedurally unconscionable. Plaintiff first contends that the agreement is adhesive. However, as Defendant notes, the Arbitration Agreement expressly provided Plaintiff with the opportunity to opt-out of the agreement. The final paragraph of the Arbitration Agreement, directly above the signature line, states "[e]mployee acknowledges that he/she has the right to opt out of this Agreement by sending a letter to the RESOLVE Program Administrator . . . within 30 calendar days, stating Employee wishes to 'opt-out' of this Agreement." Doc. No. 4-7 at 3. The Ninth Circuit has held that an arbitration agreement is not adhesive if there is a meaningful opportunity to opt out of it. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding no procedural unconscionability where there was a thirty-day period to consider whether to opt out of arbitration); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir.

2013) (en banc).

Additionally, Plaintiff argues that the agreement's opt-out provision is "illusory" because if Plaintiff opted-out within the thirty days, she could no longer remain employed by Defendant. Doc. No. 5 at 7. Plaintiff's argument, however, is misplaced. "An illusory promise is one containing words in promissory form that promise nothing and which do not purport to put any limitation on the freedom of the alleged promisor." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (internal quotation marks and citation omitted). Although the agreement provides that "[e]mployee understands that he/she would not be or remain employed by Sterling absent signing this Agreement," the next paragraph in agreement expressly provided Plaintiff with an opportunity to opt-out of the Arbitration Agreement. Contrary to Plaintiff's contention, nothing in the agreement indicates that if an employee chooses to opt-out of the Arbitration Agreement, Sterling will terminate his or her employment. Rather, "the contract bound [Sterling] to accept opt-outs from [individuals] who followed the procedure it set forth." *Mohamed*, 848 F.3d at 1211.

Accordingly, the Court finds that the Arbitration Agreement is not procedurally unconscionable. Because the Court finds that the Arbitration Agreement is not procedurally unconscionable, the Court need not reach Plaintiff's substantive unconscionability arguments.[3] *See id.* ("Because the agreements were not procedurally unconscionable, and because both procedural and substantive unconscionability must be

---

[3] The parties rely solely on California law in discussing the alleged unconscionability of the agreement. The Court notes that the Arbitration Agreement contains a choice-of-law provision which states, "[t]his Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of Ohio." Doc. No. 4-7 at 3. The Court need not engage in a choice of law analysis, however, because the Court would reach the same result under Ohio law. *See Bruster v. Uber Techs., Inc.*, 188 F. Supp. 3d 658, 664 (N.D. Ohio 2016) (finding no procedural unconscionability under Ohio law where the plaintiff "had 30 days from accepting the agreement to decide whether to opt out of arbitration altogether."). Because "Ohio law requires that both [procedural and substantive unconscionability] components be present," the Court need not address Plaintiff's substantive unconscionability argument under Ohio law. *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1018 (6th Cir. 2005).

present in order for an agreement to be unenforceable, we need not reach the question whether the agreements here were substantively unconscionable.").

### 3. Arbitrability of Plaintiff's Retaliatory Discharge and PAGA Claims

Plaintiff argues that even if a valid agreement to arbitrate exists, her (a) retaliatory discharge claims, and (b) claims under California's Private Attorney General Act ("PAGA"), California Labor Code § 2699, are not subject to arbitration. *See* Doc. No. 5 at 9. Defendant disagrees only with respect to Plaintiff's retaliatory discharge claims and contends that "Plaintiff's private claims under the first through thirteenth and fifteenth causes of action should be compelled to arbitration." Doc. No. 9 at 11.

#### *a. Retaliatory Discharge Claims*

Plaintiff asserts that her third, fourth, ninth, and tenth causes of action "for retaliatory discharge are not subject to arbitration, because there is a strong public policy that such claims should be judicially adjudicated." Doc. No. 5 at 9. In support of her argument, Plaintiff cites to *Labib v. Younan*, wherein a district court in New Jersey, relying on New Jersey state law, concluded that the plaintiff's retaliatory discharge claims were not subject to arbitration. 755 F. Supp. 125, 129-30 (D.N.J. 1991). Plaintiff, however, cites to no binding authority in support of this argument. In response, Defendant argues that the FAA preempts any state law or policy which would restrict arbitrability. The Court agrees, and concludes that Plaintiff's retaliatory discharge claims are subject to arbitration. *See Saline v. Northrop Grumman Corp.*, 2009 WL 10674037, at *1, 12 (granting the defendant's motion to compel arbitration of the plaintiff's claims for discrimination under 29 U.S.C. § 623 and *California Government Code § 12940, retaliatory termination in violation California Labor Code § 1102.5*, wrongful termination in violation of public policy, and intentional infliction of emotional distress) (emphasis added).

#### *b. PAGA Claims*

Additionally, Plaintiff contends that the demand to arbitrate her fourteenth cause of action for relief under PAGA is "unenforceable." Doc. No. 5 at 9. Defendant concedes

that "a PAGA claim, as plead here, cannot be subject to arbitration," but that does "not prevent the arbitrability of Plaintiff's remaining claims." Doc. No. 9 at 5. The Court agrees. *See Jacobson v. Snap-on Tools Co.*, 2015 WL 8293164, at *5 (N.D. Cal. Dec. 9, 2015) (noting that the plaintiff's "non-class, representative claim for civil penalties under PAGA is not subject to arbitration. [The plaintiff's] right to bring representative PAGA claims is not waived by the Agreement or preempted by the FAA."); *see also Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015); *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129 (Cal. 2014). As such, Plaintiff's PAGA claims are not subject to arbitration.

### 4. A Stay of Plaintiff's PAGA Claims is Appropriate

Pursuant to 9 U.S.C. § 3, the Court must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *Concepcion,* 563 U.S. at 1740. If a court "determines that all of the claims raised in the action are subject to arbitration," the court "may either stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). However, if a court finds that the plaintiff asserts both arbitrable and nonarbitrable claims, district courts have "discretion whether to proceed with the nonarbitrable claims before or after the arbitration and [have] ... authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Wilcox v. Ho–Wing Sit,* 586 F. Supp. 561, 567 (N.D. Cal. 1984); *see also Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979).

Here, the Court, in its discretion, finds that a stay of Plaintiff's PAGA claims is appropriate based upon the Court's interest, as well as the parties' interests, in saving time and effort. *See Leyva*, 593 F.3d at 863-64. Notably, "Plaintiff's PAGA claims are derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision." *Shepardson v. Adecco USA, Inc.*, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016); *see also Jacobson*, 2015 WL 8293164, at *6 (granting the defendant's motion to compel

arbitration on all of the plaintiff's individual claims and staying the representative PAGA claim pending completion of arbitration).

### CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Defendant's motion. The Court **GRANTS** Defendant's motion to compel arbitration of Plaintiff's first through thirteenth and fifteenth causes of action. The Court **DENIES** Defendant's motion to compel arbitration of Plaintiff's PAGA claims, and **STAYS** the PAGA claims pending the outcome of the arbitration proceedings. The parties are directed to file a notice with the Court regarding the outcome of the arbitration proceedings within fourteen (14) calendar days of the issuance of the arbitrator's decision.

**IT IS SO ORDERED.**

Dated: February 16, 2018

HON. MICHAEL M. ANELLO
United States District Judge